UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| LARRY E. JONES, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-00120-CDP |
| | ) | |
| NICHOLAS VAETH[1], et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Larry E. Jones, Jr. for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will not assess an initial filing fee at this time. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's complaint without prejudice as to defendant Ste. Genevieve Sheriff's Department, and will stay plaintiff's action against defendant Matt Ballew until final disposition of plaintiff's pending criminal action.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-

---

[1] Plaintiff has brought a motion to substitute defendant Matt Ballew for defendant Nicholas Vaeth. The Court will grant plaintiff's motion and ask the Clerk of the Court to formally substitute defendant Ballew for defendant Vaeth in this action.

month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

Plaintiff has submitted a certified inmate account statement. (Docket No. 3). The statement shows a starting balance of zero, that plaintiff has made no deposits, and that he currently has a negative account balance. As a result, the Court will not require plaintiff to file an initial partial filing fee at this time. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997). *See also* 28 U.S.C. § 1915(b)(4) (stating that a prisoner shall not be prohibited from bringing a civil action for the reason the prisoner has "no means by which to pay the initial partial filing fee").

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim for relief under 42 U.S.C. § 1983, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but "does not accept as true any legal conclusion couched as a factual allegation"). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679.

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff is a pretrial detainee at the St. Louis County Jail. He brings this action pursuant to 42 U.S.C. § 1983 against law enforcement officer Matt Ballew and the Ste. Genevieve Sheriff's Department. Defendant Ballew is sued in both his individual and official capacities, and the Ste. Genevieve Sheriff's Department is sued in its official capacity.

Plaintiff's complaint states that on February 20, defendant Ballew, acting in his capacity as an officer of the Ste. Genevieve Sheriff's Department, crossed the state line into Cahokia, Illinois, and entered the house of plaintiff's sister-in-law. (Docket No. 1 at 3). Plaintiff alleges

3

that Ballew entered his sister-in-law's residence without a search warrant or permission or with any Illinois law enforcement on the scene. He states that Ballew handcuffed him at gunpoint and forced him out of the residence. He also alleges that Ballew reentered the sister-in-law's residence without permission or a search warrant and took property that was located therein.

Plaintiff states that all these events took place in Cahokia, Illinois, and that Ballew is employed by the Ste. Genevieve Sheriff's Department, in Ste. Genevieve, Missouri. He alleges that Ballew's actions demonstrate that he is "guilty" of "home invasion," "unlawful restraint," and "kidnapping." (Docket No. 1 at 4). He states that Ballew's actions were criminal and violated his civil rights. He also alleges that the Ste. Genevieve Sheriff's Department is responsible for Ballew's "criminal conduct" and his violation of plaintiff's civil rights.

Plaintiff further alleges that his left hand was re-broken by Ballew when Ballew handcuffed him. He notes that his hand was x-rayed at the St. Louis County Jail and placed into a half cast. However, plaintiff alleges that due to his hand being re-broken, it is healing abnormally and causing him pain. Plaintiff seeks $500,000 in damages.

**Discussion**

Plaintiff's complaint alleges that defendant Ballew violated his constitutional rights by crossing into Illinois, entering the residence of plaintiff's sister-in-law without a warrant, and unlawfully arresting him. The complaint alleges that Ballew's employer, the Ste. Genevieve Sheriff's Department, is responsible for plaintiff's conduct. Having carefully reviewed and liberally construed plaintiff's allegations, and for the reasons discussed below, the Court must dismiss plaintiff's claims against the Ste. Genevieve Sheriff's Department pursuant to § 1915(e)(2)(B). Furthermore, it is appropriate that the Court stay and administratively close the action against Ballew until final disposition of plaintiff's underlying criminal case.

### A. Defendant Ste. Genevieve Sheriff's Department

Plaintiff's claims against the Ste. Genevieve Sheriff's Department are legally frivolous and will be dismissed. The Ste. Genevieve Sheriff's Department is not a legal entity that can be sued pursuant to § 1983. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (stating that entities such as a police department are simply departments or subdivisions of city government, and "not juridical entities, suable as such"); *Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) ("[C]ounty jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi County Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (stating that sheriff's departments and police departments are not usually considered legal entities subject to suit under § 1983). The Ste. Genevieve Sheriff's Department is a mere department of Ste. Genevieve County. Accordingly, the claims made against the Ste. Genevieve Sheriff's Department must be dismissed.

Even if the Court were to construe the complaint as one against the county, and substitute it as the defendant, the claim still fails. A local governing body can be sued directly under § 1983. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978). However, the allegedly unconstitutional action must be one that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. In other words, the "test is whether there exists a policy, custom, or action by those who represent official policy which inflicts an injury actionable under § 1983." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). To show this, the plaintiff must first demonstrate "a continuing, widespread, persistent pattern of unconstitutional misconduct" by the defendant's employees. *S.J. v. Kansas City Mo. Pub. Sch. Dist.*, 294 F.3d 1025, 1028 (8th Cir. 2002). Next, the plaintiff must show "deliberate indifference to or tacit authorization" of the conduct by the

defendant's policymaking officials, after notice to the officials of the misconduct. *Id*. Finally, the plaintiff must prove he was injured by acts pursuant to the defendant's custom, that is, "that the custom was the moving force behind the constitutional violation." *Id*.

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson*, 388 F.3d at 591. However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). Here, plaintiff alleges no facts from which the Court could infer that the conduct plaintiff is complaining of resulted from an unconstitutional policy or custom. Rather, the substance of plaintiff's complaint against the county is that it is "responsible" for Ballew's conduct. However, a plaintiff in a § 1983 action cannot recover on the basis of respondeat superior. *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017) (stating that county could not "be held liable on a respondeat superior theory, that is, solely because it employs a tortfeasor"); *Vaughn v. Greene Cty., Ark.*, 438 F.3d 845, 851 (8th Cir. 2006) ("[I]t is well settled the doctrine of respondeat superior is inapplicable to section 1983 claims"). Accordingly, plaintiff's claims against the St. Genevieve Sheriff's Department must be dismissed.

**B. Defendant Ballew**

Plaintiff's claims against defendant Ballew must be stayed pending final disposition of plaintiff's pending criminal action. The United States Supreme Court has held that in order to recover damages under § 1983 for an unconstitutional conviction or imprisonment, a plaintiff must prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*,

512 U.S. 477, 486-87 (1994). A claim for damages regarding a conviction or sentence that has not been invalidated is not cognizable under § 1983. *Id*. at 487. *See also Newmy v. Johnson*, 758 F.3d 1008, 1009 (8th Cir. 2014); *Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996).

In *Wallace v. Kato*, the Supreme Court observed that it was common practice in § 1983 actions to stay the civil proceedings until the criminal case had ended. 549 U.S. 384, 393-94 (2007). The issue in *Wallace* was the timeliness of a § 1983 suit seeking damages for an arrest that allegedly violated the Fourth Amendment. *Id*. at 386. In answering that question, the Supreme Court noted that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." *Id*. at 388. The Court explained that where "a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Id.* at 393-94. Otherwise, the court and the parties are left to "speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the impending civil action will impugn that verdict, all this at a time when it can hardly be known what evidence the prosecution has in its possession." *Id.* at 393 (internal citation omitted).

Plaintiff alleges that Ballew violated his constitutional rights by entering his sister-in-law's Illinois residence without a warrant, handcuffing and arresting him, and placing him into Ballew's vehicle. The underlying Missouri criminal case against plaintiff has been docketed as *State v. Jones*, No. 18SG-CR00225 (24th Judicial Circuit, Ste. Genevieve County)[2]. The Court takes judicial notice of this public state record. *See Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); *Stutzka v.*

---

[2] *State v. Jones*, No. 18SG-CR00225 (24th Judicial Circuit, Ste. Genevieve County) was retrieved from Missouri Case.net, https://www.courts.mo.gov/, which is Missouri's state court automated case management system.

*McCarville*, 420 F.3d 757, 760 n. 2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records"). A probable cause affidavit was authored by Ballew on February 22, 2018, and filed on March 12, 2018. Ballew's statement, provides in relevant part:

> On Wednesday, February 21, 2018 at approximately 0624 hours, Deputy Vaeth was advised by Central Dispatch to respond to 23404 State Route J in reference to a white passenger van being taken from the residence sometime throughout the night.
>
> He arrived to the above address and was met by the reporting party, identified as:
>
> Otte, Mary Beth…
>
> Mary stated she went out to retrieve the white passenger van at approximately 0600 hours and noticed it was missing. Mary stated she was driving the van the night before and parked the vehicle down from her residence near some barn sheds at approximately 0000 hours the night before. Mary stated she then contacted Central Dispatch to seek the assistance of Law Enforcement…
>
> Through a traffic crash investigation the night before, February 20, 2018 at approximately 2323 hours near the 141 mile marker, a potential suspect was identified. The suspect is fully identified as:
>
> Jones, Larry Eugene
> W/M DOB: 02/10/1970
>
> The traffic crash, as noted by Central Dispatch, was called in by a third party who stated there was a light colored truck off the roadway and the third party caller was unsure if anyone was in or around the vehicle or if anybody suffered injuries. Upon arrival by responding units, it was determined nobody was in or around the vehicle. The motor vehicle was run through the statewide computer database and had come back as stolen. At approximately 0220 hours, deputies were advised to make phone contact with a female subject in reference to her brother being involved in a motor vehicle accident near the Ozora, MO area. The female was fully identified as:
>
> Mesey, Christina Lee…
>
> Mesey stated her brother, Larry Jones, was in a motor vehicle accident and she had been in phone contact with him. Mesey advised Jones had sent her a text message at approximately 0220 hours stating he was hiding in the woods near Interstate 55 and could see the Exxon Mobile Gas Station, the Ozora Truck & Travel, located at the intersection of State Route N and New Bremen Road, from

where he was hiding. Mesey stated that was the last she had heard from Jones and she believed his phone had died.

After a thorough search of the area around the location of the traffic crash and the Exxon Mobile gas station for Jones, he was not located. Jones stated to Mesey he could see the Exxon Mobile gas station across the interstate from where he was hiding. The location where the van was stolen was in full view of the Exxon Mobile gas station, from across the interstate.

Deputy Vaeth asked Central Dispatch to enter the vehicle into the statewide computer database as stolen.

On February 21, 2018, at approximately 1 p.m., after reviewing Deputy Vaeth's initial report, I contacted Christina Mesey via telephone. I asked Christina to recount her conversation with her brother, Larry Jones. Christina stated that she had been contacted by Larry via text message at approximately 2:20 a.m. on the previous night. Christina stated that Larry advised her that he had been in an automobile accident and was hiding in the woods near Ozora, within sight of the gas station and hotel. Christina stated that she was concerned for her brother's well being and contacted Central Dispatch to advise law enforcement of the situation. I asked Christina if she had heard from Larry since the previous night. She stated that she had just received a text from him prior to speaking to me and that Larry had advised her that he was in pain but didn't want to go to the hospital. I asked Christina if she knew where Larry might be. She stated that Larry was likely at their sister-in-law, Belinda's residence, located at 1114 St. Marcella Drive in Cahokia, IL…Christina stated that Larry typically goes to Belinda's house when he gets into trouble.

I traveled to 1114 St. Marcella Drive in Cahokia to see if the van was in the area. Upon passing by the residence, I observed the van parked on the carport of the residence. I noticed that the license plates that belonged on the van had been removed and replaced with a Missouri license plates on the rear…This plate returned not on file through the MULES statewide computer system. I parked in front of the residence and walked to the van for closer inspection. I confirmed that it was the van stolen on the previous night by reading the VIN tag on the dash. I returned to my vehicle to contact the Cahokia Police Department for assistance. While doing so, I observed a female, later identified as Belinda, looking out the front door of the residence. I asked Belinda to come outside and asked her if Larry was inside the house. She stated that he was and lead me inside to a bedroom near the rear of the residence. Larry was lying on a bed inside the room. I asked Larry to stand up. As he did, he asked me to be careful because his hand hurt. I noticed a cell phone lying beneath him, which I secured as evidence. Cahokia Police Department Sgt. Ruberstell arrived a short time later, at which time it was discovered that Larry had multiple outstanding warrants for his arrest. Larry was placed under arrest for the outstanding warrants.

The State of Missouri filed an amended complaint against plaintiff on March 26, 2018. The amended complaint charges plaintiff with stealing a motor vehicle (Felony D); tampering with a motor vehicle (Felony D); driving while revoked/suspended (Felony E); leaving the scene of an accident (Felony E); operating a motor vehicle in a careless and impudent manner, involving an accident (Misdemeanor A); and failing to wear a properly adjusted/fastened safety belt (Infraction).

Plaintiff's § 1983 action is based on the same set of facts and circumstances giving rise to the Missouri state criminal case currently pending before the 24th Judicial Circuit in *State v. Jones*, No. 18SG-CR00225. His § 1983 complaint includes claims that can be construed as being for false arrest, false imprisonment, and illegal search and seizure in violation of the Fourth Amendment. These claims relate to rulings that "will likely be made in a pending or anticipated criminal trial." *Wallace*, 549 U.S. at 393. The principles of *Wallace v. Kato* dictate that further consideration of plaintiff's § 1983 claims should be stayed until the underlying criminal matter against plaintiff has been resolved through criminal proceedings. *See, e.g., Vonneedo v. Dennis*, No. 1:17-CV-183 NAB, 2017 WL 5904005, at *2 (E.D. Mo. Nov. 30, 2017) (staying § 1983 case alleging unconstitutional search and seizure under principles articulated in *Wallace v. Kato*); *Anderson v. Robinson*, No. 4:12-CV-967 CAS, 2013 WL 4502598, at *1 (E.D. Mo. Aug. 22, 2013) (same).

Additionally, a stay or abstention until resolution of the criminal matter would be appropriate because a prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his conviction, continued imprisonment or sentence, unless the conviction or sentence is reversed, expunged or called into question by issuance of a

writ of habeas corpus. *See Heck*, 512 U.S. at 486-87; *Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995).

In section III of plaintiff's complaint, where he is asked to describe any injuries he allegedly suffered, plaintiff states that his "left hand was re-broke by officer [Ballew] when he cuffed me." (Docket No. 1 at 4). The Court notes that to the extent that plaintiff has additional claims against any defendants for excessive force or deliberate indifference, plaintiff may file an additional complaint in this Court that is separate from the present lawsuit. *See Colbert v. City of Monticello, Ark.*, 775 F.3d 1006, 1008 (8th Cir. 2014) (Noting that a finding of excessive force against defendant would not necessarily imply the invalidity of plaintiff's convictions). The Court will instruct the Clerk of the Court to provide plaintiff with a blank prisoner complaint form for this purpose.

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to substitute defendant Matt Ballew for defendant Nicholas Vaeth (Docket No. 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall substitute defendant Matt Ballew for defendant Nicholas Vaeth in this action.

**IT IS FURTHER ORDERED** that plaintiff's claims against defendant St. Genevieve Sheriff's Department are **DISMISSED** without prejudice. A separate order of partial dismissal with be entered herewith.

**IT IS FURTHER ORDERED** that all proceedings in this case are **STAYED** pending final disposition of the criminal charges pending against plaintiff in *State v. Jones*, No. 18SG-

CR00225 (24th Judicial Circuit, Ste. Genevieve County), as well as any direct appeals and post-conviction proceedings.

**IT IS FURTHER ORDERED** that plaintiff shall notify the Court in writing concerning the final disposition of the criminal charges pending against him in *State v. Jones*, No. 18SG-CR00225 (24th Judicial Circuit, Ste. Genevieve County), as well as any direct appeals and post-conviction proceedings.

**IT IS FURTHER ORDERED** that this case is **ADMINISTRATIVELY CLOSED** pending final disposition of the criminal charges against plaintiff, and may be reopened by plaintiff's filing of a motion to reopen the case after such final disposition of all direct appeals and post-conviction proceedings.

**IT IS FURTHER ORDERED** that the Clerk is directed to mail to plaintiff a copy of the Court's prisoner civil rights complaint form.

Dated this 16th day of July, 2018.

                                          CATHERINE D. PERRY
                                        UNITED STATES DISTRICT JUDGE